[No. C028004. Third Dist. Oct. 16, 1998.]

RICHARD SABATH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA
HIGHWAY PATROL, Respondents.

**COUNSEL**

Jones, Clifford, McDevitt, Naekel & Johnson and Jane E. Naekel for Petitioner.

Krimen, Da Silva, Daneri, Bloom & Landsiedel and Don E. Clark for Respondents.

## Opinion

**BLEASE, Acting P. J.**—Petitioner, Richard Sabath, seeks review of an order of the Workers' Compensation Appeals Board (Board) that $246 per week of the salary he received in lieu of disability payments under Labor Code section 4800.5, subdivision (b),[1] by reason of entitlement to a vocational rehabilitation maintenance allowance (VRMA) under section 139.5, is to be credited toward the $16,000 cap on vocational rehabilitation benefits established by the latter section.

We granted a petition to review the order. We will conclude the WCAB decision is not correct and shall reverse the order.

### Factual and Procedural Background

On May 8, 1995, Sabath, a sworn employee of the California Highway Patrol (CHP), filed a claim with the State Compensation Insurance Fund (SCIF) for workers' compensation benefits by reason of a cumulative injury from work-related stress and injuries to his chest, stomach, head and psyche. He was taken off work on May 15, 1995, and was paid his full salary of $1,263 per week in lieu of disability payments pursuant to section 4800.5.[2]

On February 15, 1996, Sabath's injury was determined to be permanent. His salary was terminated pursuant to section 4800.5, subdivision (b), which provides that in the case of a cumulative trauma or injury, benefits are

---

[1] References to a section are to the Labor Code.

[2] As pertinent, section 4800.5, subdivisions (a) and (b) provide as follows:

"(a) Whenever any sworn member of the Department of the California Highway Patrol is disabled by a single injury, excluding disabilities that are the result of cumulative trauma or cumulative injuries, arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the patrol, to leave of absence while so disabled without loss of salary, in lieu of disability payments under this chapter, for a period of not exceeding one year. This section shall apply only to members of the Department of the California Highway Patrol whose principal duties consist of active law enforcement and shall not apply to persons employed in the Department of the California Highway Patrol whose principal duties are those of telephone operator, clerk, stenographer, machinist, mechanic, or otherwise clearly not falling within the scope of active law enforcement service, even though this person is subject to occasional call or is occasionally called upon to perform the duties of active law enforcement service.

"(b) Benefits payable for eligible sworn members of the Department of the California Highway Patrol whose disability is solely the result of cumulative trauma or injury shall be limited to the actual period of temporary disability or entitlement to maintenance allowance, or for one year, whichever is less."

"limited to the actual period of temporary disability or entitlement to maintenance allowance, or for one year, whichever is less."[3] (Stats. 1996, ch. 305, § 42.) He thereafter participated in a vocational rehabilitation program under section 139.5 and became entitled to a maintenance allowance.[4] The payment of his full salary resumed by virtue of section 4800.5, subdivision (b), for two months. As part of his vocational rehabilitation plan SCIF credited $246 per week of the full salary he received during this period, or approximately $2,000, to the $16,000 cap on vocational benefits established in

---

[3]As applicable in 1996, section 4800.5, subdivision (b), did not contain the one year limitation. (Stats. 1994, ch. 762, § 8.) However, the limitation was contained in subdivision (a). Accordingly, the 1996 amendment adding the limitation to subdivision (b) worked no change in the law. For that reason we refer to the amended statute of 1996.

[4]As pertinent, section 139.5, subdivisions (c) and (d) provide:

"(c) When an employee is determined to be medically eligible and chooses to participate in a vocational rehabilitation program, he or she shall continue to receive temporary disability indemnity payments only until his or her medical condition becomes permanent and stationary and, thereafter, may receive a maintenance allowance. Rehabilitation maintenance allowance payments shall begin after the employee's medical condition becomes permanent and stationary, upon a request for vocational rehabilitation services. Thereafter, the maintenance allowance shall be paid for a period not to exceed 52 weeks in the aggregate, except where the overall cap on vocational rehabilitation services can be exceeded under this section or Section 4642 or subdivision (d) or (e) of Section 4644.

"The employee also shall receive additional living expenses necessitated by the vocational rehabilitation services, together with all reasonable and necessary vocational training, at the expense of the employer, but in no event shall the expenses, counseling fees, training, maintenance allowance, and costs associated with, or arising out of, vocational rehabilitation services incurred after the employee's request for vocational rehabilitation services, except temporary disability payments, exceed sixteen thousand dollars ($16,000). The administrative director shall adopt regulations to ensure that the continued receipt of vocational rehabilitation maintenance allowance benefits is dependent upon the injured worker's regular and consistent attendance at, and participation in, his or her vocational rehabilitation program.

"(d) The amount of the maintenance allowance due under subdivision (c) shall be two-thirds of the employee's average weekly earnings at the date of injury payable as follows:

"(1) The amount the employee would have received as continuing temporary disability indemnity, but not more than two hundred forty-six dollars ($246) a week for injuries occurring on or after January 1, 1990.

"(2) At the employee's option, an additional amount from permanent disability indemnity due or payable, sufficient to provide the employee with a maintenance allowance equal to two-thirds of the employee's average weekly earnings at the date of injury subject to the limits specified in subdivision (a) of Section 4453 and the requirements of Section 4661.5. In no event shall temporary disability indemnity and maintenance allowance be payable concurrently.

"If the employer disputes the treating physician's determination of medical eligibility, the employee shall continue to receive that portion of the maintenance allowance payable under paragraph (1) pending final determination of the dispute. If the employee disputes the treating physician's determination of medical eligibility and prevails, the employee shall be entitled to that portion of the maintenance allowance payable under paragraph (1) retroactive to the date of the employee's request for vocational rehabilitation services. These payments shall not be counted against the maximum expenditures for vocational rehabilitation services provided by this section."

section 139.5. This did not shorten the period Sabath received his full salary since the maximum entitlement of one year ended before the cap on vocational benefits had been expended. It did reduce the dollar amount of vocational benefits that Sabath could subsequently receive.

Finding this unacceptable, Sabath filed a request for dispute resolution with the rehabilitation unit of the division of workers' compensation. The rehabilitation unit found that Sabath's salary was not a benefit to be credited toward the $16,000 cap. Sabath's employer, the CHP, filed an appeal from the rehabilitation unit's determination, which was affirmed by a workers' compensation judge.

The CHP petitioned for reconsideration by the Board. The Board granted reconsideration and issued an opinion which concluded the employer could apply $246 per week of Sabath's salary toward the $16,000 cap on rehabilitation benefits.

Pursuant to Sabath's petition we issued a writ of review.

### DISCUSSION

■ The issue is whether $246 per week of the full salary Sabath received in lieu of disability payments during the period of entitlement to a maintenance allowance under section 4800.5, subdivision (b), should be credited toward the $16,000 cap on vocational rehabilitation benefits under section 139.5. The answer turns on whether the salary is in lieu of the maintenance allowance provided by section 139.5.

### I

At issue is the construction of workers' compensation statutes. ■ "In interpreting [them] we do not start with whole cloth. We are directed by section 3202 to 'liberally construe[]' the workers' compensation statutes 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' This rule provides a means for resolution of ambiguities which affect coverage." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 733 [199 Cal.Rptr. 697].)

■ We start with section 4800.5, subdivision (a). It provides that a CHP officer disabled in the course of duty is entitled to a "leave of absence while so disabled without loss of salary, *in lieu of disability payments under this chapter,* for a period of not exceeding one year." (Italics added.) This

language was borrowed from section 4800 in 1994 when CHP members were removed from section 4800 and placed in section 4800.5. (Stats. 1994, ch. 762, § 8, eff. Sept. 23, 1994.) The former section still applies to "safety" members of the Department of Justice. In view of this history it is clear the Legislature intended that the phrase "[full] salary, in lieu of disability payments under this chapter" have the same meaning in section 4800.5 as in section 4800. For that reason we look to the cases construing section 4800 as authority for the construction of section 4800.5.

The cases have consistently read the phrase "in lieu of disability payments *under this chapter*" in section 4800 to mean in lieu of temporary disability payments since that is the only disability payment specified in the chapter of which section 4800 is a part.[5] (See *Amborn* v. *Workmen's Comp. Appeals Bd.* (1971) 19 Cal.App.3d 953 [97 Cal.Rptr. 466]; *Dept. of Motor Vehicles* v. *Ind. Acc. Com.* (1947) 78 Cal.App.2d 626 [178 P.2d 43] (*DMV*); *Edgar* v. *Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1 [76 Cal.Rptr.2d 83] (*Edgar*); and see *Dept. of Motor Vehicles* v. *Indus. Acc. Com.* (1939) 14 Cal.2d 189 [93 P.2d 131] (*IAC*), italics added.) It follows that the full salary is not in lieu of disability payments that are *not* provided "under th[e] chapter" of which section 4800 is a part and they may be paid concurrently with the full salary. Thus, in *Amborn, DMV and IAC*, the courts held that under section 4800 permanent disability payments could be paid concurrently with a full salary.

In *Edgar* this reasoning was extended to the maintenance allowance provided under section 139.5. *Edgar* holds that the Legislature did not intend that $246 per week of the salary paid under section 4800 be included in calculating the cap on vocational services in section 139.5 for the reason the full salary payable under section 4800 is not in lieu of the maintenance allowance. (65 Cal.App.4th at p. 6.)[6] Since there is no reason to distinguish the language in section 4800.5 from that of section 4800, we conclude that *Edgar* is controlling in this case.

The CHP argues that the maintenance allowance provided by section 139.5 is analogous to temporary disability payments and accordingly the salary provided by section 4800.5 is in lieu of the maintenance allowance. We disagree. The maintenance allowance is plainly not a disability payment "under th[e] chapter" of which section 4800.5 is a part. Nor is it in the nature

---

[5]Section 4804 provides that: "No disability indemnity shall be paid [a] member of the California Highway Patrol . . . as temporary disability concurrently with wages or salary payments."

[6]Although *Edgar* does not hold the maintenance allowance may be paid concurrently with a salary, that is the logic of the court's position.

of temporary disability. Under section 139.5, subdivision (c), the entitlement to a maintenance allowance begins when temporary disability ends.

Accordingly, we read the "in lieu" language of section 4800.5, subdivision (a), as not extending to the maintenance allowance under section 139.5. The remaining question is whether subdivision (b) of section 4800.5 compels a different reading.

## II

Subdivision (a) of section 4800.5 excludes disabilities that are the result of cumulative trauma or injury, the case here. They are governed by subdivision (b). It provides in pertinent part: "Benefits payable for eligible [CHP members] whose disability is solely the result of cumulative trauma or injury[7] shall be limited to the actual period of temporary disability or *entitlement to maintenance allowance*, or for one year, whichever is less." (§ 4800.5, subd. (b), italics added.)

Section 4800.5, subdivision (b) does not expressly provide for a salary "in lieu of disability payments," as provided for other types of injuries under subdivision (a). However, the term "benefits payable" assumes that is the case and the parties do not argue otherwise nor would such a construction make sense.[8] Thus, subdivision (b) extends the period of entitlement to a full salary "in lieu of disability payments under this chapter" beyond the "actual period of temporary disability" if the recipient becomes "entitle[d] to [a] maintenance allowance, or for one year, whichever is less."[9] There is no language which says that officers suffering cumulative trauma or injury shall be treated differently than officers suffering other forms of injury and no language which bars the payment of a maintenance allowance during the period of receipt of a full salary. Rather, the limitations of subdivision (b) serve only to measure the *duration* of entitlement to a salary in lieu of disability benefits.

---

[7]A cumulative injury is one which occurs as a result of "repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment." (§ 3208.1.) It is to be distinguished from a specific injury, which occurs "as the result of one incident or exposure . . . ." (*Ibid.*)

[8]If "[b]enefits payable" were construed to include only benefits payable under *other* provisions of the workers' compensation law, eligible CHP officers would be limited to one year for all such benefits. The implication is foreclosed by section 4800.5, subdivision (c). "When this section [including subdivision (b)] does not apply, the employee shall be eligible for those benefits that would apply had this section not been enacted."

[9]Under section 139.5, subdivision (c), an employee who is medically eligible for vocational rehabilitation benefits is entitled to a VRMA when his or her "medical condition becomes permanent and stationary . . . ." Since that entitlement begins when the period of temporary disability ends, the disjunction in the phrase "actual period of temporary disability or entitlement to maintenance allowance" must be read as and/or. The Board so reads it.

The entitlement to a maintenance allowance is governed by section 139.5. Subdivision (c) of section 139.5 provides that a medically eligible employee who participates in a vocational rehabilitation program "shall continue to receive temporary disability indemnity payments only until his or her medical condition becomes permanent and stationary and, thereafter, may receive a *maintenance allowance*." (Italics added.) As pertinent here, a maintenance allowance "shall be paid for a period not to exceed 52 weeks . . . except where the overall [dollar] cap on vocational rehabilitation services can be exceeded under this section . . . ." (*Ibid.*) The cap is $16,000 which includes "[t]he amount of the maintenance allowance due . . . [¶] . . . but not more than [$246] a week . . . ." (§ 139.5, subd. (d)(1).)

As noted, Sabath's temporary disability ended on February 15, 1996, two months before the expiration of the limit of one year on the payment of a full salary, and he became eligible for vocational benefits and to entitlement to a maintenance allowance under section 139.5. He was not actually paid a maintenance allowance. Nonetheless, the amount he would have received as a maintenance allowance, $246 per week, was credited by the Board toward the cap on all vocational benefits under the theory his salary under section 4800.5 was in lieu of the allowance, hence should be treated the same. The credit did not cause the cap to be exceeded during the two months but it did reduce the remainder of the benefit cap available to pay other vocational benefits.

Sabath makes no claim that he is entitled to both a full salary and a maintenance allowance. He argues that he did not in fact receive a maintenance allowance, hence there was nothing to deduct during that period in calculating the cap on vocational benefits. However, the logical corollary of the claim that $246 per week of the salary he did receive should *not* be credited against the cap on vocational benefits is that he was entitled to concurrently receive both a salary and a maintenance allowance. To actually pay $246 and then deduct it from the cap has exactly the same effect as not crediting it when it is not provided. The cap remains unaffected in either case.

Nor is there anything in section 139.5 which bars the concurrent payment of salary and maintenance allowance. Subdivision (d)(2) provides only that "[i]n no event shall temporary disability indemnity and maintenance allowance be payable concurrently."[10] The maintenance allowance is included in the cap on vocational benefits only when it actually is paid. Accordingly,

---

[10]This caveat is unnecessary since eligibility for a maintenance allowance does not commence until "the employee's medical condition becomes permanent and stationary . . . ." (§ 139.5, subd. (c).)

since Sabath received no maintenance allowance, the Board had no authority to credit the putative amount of the allowance in calculating the cap on vocational benefits.

## DISPOSITION

The decision of the Workers' Compensation Appeals Board dated October 2, 1997, is reversed. Sabath shall recover his costs.

Davis, J., and Scotland, J., concurred.